# C. AULTMAN & Co.

## v.

## THOMAS S. SILVIS, SHERIFF.

*Chattel Mortgages—Chap. 95, Starr & C. Ill. Stats., Act of 1877, Sec.
4, page 179—Replevin.*

1.   A mortgagor has a right to secure a debt not maturing in two years
with a chattel mortgage for the full period of two years.

2.   A creditor and mortgagee may declare his whole debt due, in
advance of the time named in the note, in case of the seizure of the mort-
gaged goods by another, or in case of danger of losing his security, the
mortgage containing a provision to that end.

Aultman & Co. v. Silvis.

[Opinion filed May 21, 1891.]

APPEAL from the Circuit Court of Rock Island County; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. WILLIAM JACKSON and E. E. PARMENTER, for appellant.

To understand the chattel mortgage act correctly its purpose must be considered. No legislation is necessary to make a chattel mortgage valid between the parties. Neither the common law nor the statute forbids or prevents parties mortgaging their property when it is not done fraudulently.

The right to dispose of property by mortgage, pledge or other lawful means is but the exercise of that right of dominion and ownership that the citizen has over that which he possesses.

At common law a mortgage of personal property might be verbal, no writing being required. Jones on Chattel Mortgages, page 2, Sec. 2.

At common law a pledge or mortgage of personal property was not valid as to third persons or creditors unless possession of the property was transferred to the mortgagee or pledgee. This is a fundamental rule of the law that needs no argument. To avoid this legal requirement, and to enable the debtor to enjoy the use of his property while it may be mortgaged, the chattel mortgage act was passed.

" The most common object of such a mortgage is to enable the mortgagor to give security on the goods, and yet for the time being to retain the custody and use of them. " Jones on Mortgages, Sec. 236.

" Registration dispenses with delivery and possession." Sec. 236.

A chattel mortgage not recorded or acknowledged is binding between parties. Gregg v. Sanford, 24 Ill. 17; Forest v. Tinkham, 29 Ill. 141; McDowell v. Stewart, 83 Ill. 538.

To understand the meaning of the chattel mortgage act, under which appellee claims the mortgage in controversy is void, we refer to the act respecting chattel mortgages (Rev. Laws 1845, Chap. 20) which preceded it. It provides:

"Any mortgage of personal property so certified shall be admitted to record by the recorder of the county in which the mortgagor shall reside, at the time when the same is made, acknowledged and recorded, and shall thereupon, if *bona fide*, be good and valid from the time it is so recorded for a space of time not exceeding two years, notwithstanding the property mortgaged or conveyed by deed of trust may be left in possession of the mortgagor." Reed v. Eames, 19 Ill. 594; Cass v. Perkins, 23 Ill. 326.

Under the act of 1845 the mortgagor could hold possession of the mortgaged property for two years, yet not for that time if the debt matured before. But in Reed v. Eames the court says: "Had the mortgage in this case provided that the possession of the chattels should remain with the mortgagor two years and not become absolute on default, there would be no doubt or difficulty in the case; but it provides the contrary—that it shall be absolute on maturity of the note and default made."

Under the act of 1845 this question was presented in the case of Cook v. Thayer, 11 Ill. 617.

A mortgage was executed to secure a note payable in three years. The mortgage authorized the mortgagor to retain possession of the mortgaged property until default be made. It was claimed that this provision made the mortgage void; that the law only allowed the mortgage to run two years. But in this case it appears that the mortgagee took possession of the mortgaged property within two years. The court held the mortgage to be valid. In this case (Cook v. Thayer) the court says :

" The true meaning of the statute is, that a mortgage on personal property, duly acknowledged and recorded, and containing a provision that the property may continue in the possession of the mortgagor, shall, if made in good faith and to secure an honest debt, be good and valid against creditors and purchasers, for the space of two years after the same is recorded, and not that a mortgage which has a longer period to run is without the protection of the statute altogether. It continues valid and operative for two years, whether the

Aultman & Co. v. Silvis.

debt which it is designed to secure then becomes due or not. At the expiration of two years it ceases to be valid as against creditors and purchasers unless the possession of the property is transferred to the mortgagee."

This case has never been overruled so far as we know. It is not against the policy of the law, nor does it violate any legal principle, that a debtor should have the benefit of the two years' provision in a case where his debt runs longer than that period.

The law of 1845, as shown by the cases referred to, was applied as follows:

First. A mortgage of personal property was good for two years from the recording of the mortgage.

Second. Where the mortgage did not provide for the lien to continue for two years, the lien did not extend beyond the maturity of the debt.

Third. Where the mortgage was given to secure a debt that had a longer period to run than two years, the mortgage provision allowing the property to remain in the mortgagor's possession was good for two years; then it ceased to be a valid lien as against third persons, unless the mortgagee took possession of the property.

If the case now before your honors had to be decided under the law of 1845 there could be no controversy. We insist that, under the act of 1874, amended in 1887, there can be no contention when the law is correctly interpreted.

Statutes must be interpreted according to the intent and meaning, and not always according to the letter. When it becomes necessary to reject one or two words in a statute and to substitute another, to give force to the meaning of the law, it should be that which best effectuates the legislative intention; its words may be enlarged or restricted according to its true intent. Reinecke v. People, 15 Ill. App. 245, and cases there cited.

" It is one of the canons of construction, that the real intention of the Legislature, when actually ascertained, will prevail, and that for the purpose of such ascertainment the whole of the statute, the law existing prior to its passage, and the mischief to be remedied will be considered.

"It is also a rule that such construction will be avoided as would lead to palpable injustice and absurdity." County of Clark v. Bollman, 15 Ill. App. 281.

The interpretation contended for by counsel for appellee is narrow, partial and unfair.

A person who owes a debt that matures within two years can use his personal property in his business for the purpose of security. He can have the use of the property during the existence of the debt and enjoy all the benefits intended to be enjoyed by debtors under the chattel mortgage law. Whereas another debtor, equally meritorious and needy, whose debt does not mature within two years, under the construction contended for by appellee, can not use his personal property for security, and thus creditors and debtors of this class are alike excluded from the privileges of the law—a privilege as valuable to them as those of the first class. Property is valuable to the citizen in proportion as he can use it for the purpose of his business. The use of property for the purpose of security is a valuable privilege, which the citizen would not be denied except in cases where the public good or public policy would be promoted.

Messrs. Sweeney & Walker, for appellee.

Statutes relating to chattel mortgages, where the property is allowed to remain in the possession of the mortgagor, are in derogation of the common law, and hence are always strictly construed; and unless the mortgage is executed in every part, strictly in conformity with the statute, it is universally held to be *void* as against creditors. In other words, while *such* mortgages are allowed and permitted, they are not regarded with favor by the courts, and for the very good reason that *personal* property—the easiest to be reached by a creditor, and all that can be reached for small claims—is thus put beyond the reach of the general creditors; and also for the reason that this class of property is usually selected by the debtor to carry out a fraudulent purpose, and to hinder and delay his creditors. So well is this understood that in some States, such as Nevada and Washington, an affidavit is

required to be filed with the mortgage in the *first* instance, stating that "it is made in *good faith*, for an actual debt, and was not made to hinder, delay or defraud any creditor of the mortgagor;" and we think, without exception, such an affidavit must always be filed in case of an extension. When a mortgagee *fails* or *neglects* to see that *every step* required by the statute is complied with, his mortgage is void *ab initio*, and creditors may take the property to satisfy their debts, and are never chargeable with bad faith for so doing. The courts universally approve of such taking, and furnish the mortgagee no redress. Porter v. Dement, 35 Ill. 478–80; McDowell v. Stewart, 83 Ill. 538–40; Frank v. Miner, 50 Ill. 444–8; Sage v. Browning, 51 Ill. 217–9; Blatchford v. Boyden, 122 Ill. 657; Long v. Cockern, 128 Ill. 29; Jenney v. Jackson, 6 Ill. App. 32–6.

A simple reading of the statute shows that only a mortgage to secure a debt *until maturity* was in the mind of the Legislature. No other is referred to. Hence, at best, appellant's mortgage could only be held valid as a security for the payment of the first two notes, the last of which became due December 1, 1888, both of which had been paid long before the levy. Appellee levied his execution and took the property August 1, 1889, by virtue of the execution issued on that day.

Upon the maturity of these notes the mortgage, if valid in the first instance, thereupon ceased and expired as a *security*. There was no other note maturing within the two years, nor for the two months thereafter ; hence it was *impossible* to have the mortgage extended under the amendment of 1887 (which we shall more fully discuss hereafter) by filing an affidavit. It would be impossible to file an affidavit within the two years from filing for record, and within thirty days of the maturity of any unpaid note. There was no note to mature within that time. Therefore, as any *possible* security, the mortgage lien, if ever existing, had ceased and expired before the property was taken by appellee.

It can not be, as counsel urge, that a mortgage can be valid as against creditors, under the law of 1874, *after* the debt

it can *legally* secure has been paid, and the mortgagee still retain possession of the property. Arnold v. Stock, 81 Ill. 407–10; Blatchford v. Boyden, 122 Ill. 657; Eagle v. Rohrheimer, 21 Ill. App. 518.

The debt is the *principal* and the mortgage only the incident; and upon payment of the debt the mortgage is satisfied *eo instanti*, and is thereafter void. This has been so often decided that it is unnecessary to cite authority in its support.

C. B. SMITH, P. J. This was an action in replevin, begun by appellant against appellee, as sheriff of Rock Island County, to recover the possession of the following personal property: A new model separator with the truck stacker and fixtures and a ten-horse Canton Monitor engine. The plaintiff filed the usual declaration, and the defendant interposed all the usual pleas in replevin.

Issues were joined, and a trial before the court without a jury resulted in a verdict and judgment for appellee. The plaintiff prosecutes this appeal and alleges that the finding and judgment of the Circuit Court was erroneous. The case was tried upon an agreed state of facts, which was as follows, (except as we have abbreviated it by leaving out unimportant matters), viz.:

The following are the agreed facts:

" First. That the property replevied was on the first day of August, A. D. 1887, the property of said James M. Davis, and he remained in possession thereof until the same was levied on and taken from him by virtue of the execution hereinafter named on August 1, 1889.

" Second. That on the first day of August, 1887, said James M. Davis was indebted to said C. Aultman & Co. (an incorporated company under the general laws of the State of Ohio), of Canton, Stark County, Ohio, in the sum of $1,941.25; to secure the payment of said sum of money, said James M. Davis made and executed five promissory notes payable to the order of said C. Aultman & Co., dated August 1, 1887, and described as follows, to wit: One for $250, payable December 1, 1887; one for $425, payable December 1, 1888; one for $425, payable December 1, 1889; one for $425, payable Decem-

Aultman & Co. v. Silvis.

ber 1, 1890; one for $416.25, payable December 1, 1891; which notes drew interest at the rate of eight per cent per annum from date until maturity, and eight per cent per annum from maturity until paid; that the first two notes above mentioned have been fully paid; that the remaining three notes, together with the interest, at the time of the commencement of this suit were owned by the said C. Aultman & Co. and unpaid; that on the first day of August, 1887, the said James M. Davis made and executed a certain instrument marked 'Chattel mortgage' on the property in controversy; that the following is a correct copy of said three unpaid notes and said instrument, and the certificate of acknowledging and recording thereon."

Here follows copies of the three notes above referred to. for the amounts and due as above stated, each signed by J. M. Davis and W. H. Davis.

Then follows in the stipulation of the copy of the chattel mortgage upon the same property above described in the usual form and bearing the same date with notes.

The following is one of the clauses in the chattel mortgage included in the stipulation :

" Provided, nevertheless, that if the said party of the first part, his heirs, executors, administrators and assigns, shall well and truly pay or caused to be paid unto the said party of the second part or their successors and assigns the sum of nineteen hundred and forty-one and 25-100ths dollars with interest, according to the conditions of five certain promissory notes, signed by the said party of the first part, and payable to the order of C. Aultman & Co., dated August 1, 1887, and described as follows, to wit: One for two hundred and fifty dollars, payable December 1, 1887; one for four hundred and twenty-five dollars, payable December 1, 1888; one for four hundred and twenty-five dollars, payable December 1, 1889; one for four hundred and twenty-five dollars, payable December 1, 1890; one for four hundred and sixteen 25–100ths dollars, payable December 1, 1891; with interest at the rate of 8 per cent per annum from date until maturity, and 8 per cent per annum from maturity until paid; then

and from thenceforth these presents and everything therein
contained shall be void."

And the following is another clause taken from the said
mortgage, viz.:    *    *    *    "or if the same should be seized
upon *mesne* or final process, had against the said party of the
first part, then and in any or either of the aforesaid cases, all
of said notes shall, at the option of the party of the second
part, or their successors and assigns, without notice, become
at once due and payable; and the party of the second part, or
their successors and assigns, authorized agent or attorney,
shall thereupon have the right to take immediate possession
of said property, wherever it may be found."

We have copied only such parts of the mortgage in ques-
tion as seem necessary to be referred to in the case before us.

The mortgage was properly acknowledged and recorded.
The stipulation then continued as follows:

"Third.    That in March, 1889, said James M. Davis was
indebted to W. W. Elliott and H. B. Carpenter in the sum
of $669.25; that on March 6, 1889, the said Elliott and Car-
penter recovered a judgment in due form and in all respects
valid on said indebtedness against said James M. Davis, in
the County Court of Rock Island, Ill., for said sum of
$669.25; that on the first day of August, 1889, an execution
in due form, properly attested, was issued by the clerk of
said court, under the seal of the court, on said judgment; that
said execution was delivered to the defendant, said Thomas
S. Silvis, sheriff of said Rock Island County, and was by him
levied on the said property mentioned in the declaration and
described in said instrument, on the first day of August, 1889.

"Fourth.    That after the levy, plaintiff considered itself
insecure and unsafe and feared diminution, removal or waste
of the mortgage property for want of care; that by reason of
said levy, and for the reasons stated above of insecurity,
removal or waste, etc., plaintiff at once proceeded to obtain
possession of said property, and did declare the whole amount
of said three notes unpaid, due and payable, principal and
interest, and thereupon, on the 23d day of August, A. D.
1889, while said goods were in the defendant's possession

under said levy, plaintiff made a demand for the possession of said· property from defendant, which defendant refused to deliver to it, and thereupon this suit in replevin was brought; that the property in controversy exceeds the value of $1,000, and at the time of the commencement of this suit said three notes were wholly unpaid."

It is herein agreed between the plaintiff and defendant in this cause that the only point of contention herein is as follows :

"Plaintiff herein claims the right to recover from defendant said mortgaged property so levied on, under and by virtue of the security of said mortgage conveyance; that less than two years had elapsed since said chattel mortgage deed was filed for record before the justice and in the office of the county recorder, and before said demand was made by plaintiff upon defendant, and the commencement of this suit; and that plaintiff did recover possession of the mortgaged property from defendant by this proceeding within said two years after such recording."

On the part of the defendant it is contended that the time between the filing of said instrument for record and the maturity of the entire debt and obligation mentioned in said mortgage exceeded the term of two years, contrary to the statute; and that by reason thereof said mortgage is insufficient to allow the plaintiff to recover, and invalid as against said execution creditors, Elliott and Carpenter.

It is further agreed that the court shall decide this case wholly on the contention of plaintiff and defendant, whether said instrument is or is not a valid chattel mortgage or sufficient to allow the plaintiff to recover herein. If the court holds that the said instrument is a valid chattel mortgage, or sufficient to allow the plaintiff to recover herein, as contended by the plaintiff, the finding shall be for the plaintiff. If the court holds that the instrument is void as a chattel mortgage or insufficient to allow the plaintiff to recover herein, as contended by defendant, the finding shall be for the defendant.

Both parties reserved the right to appeal from the judgment of the court.

It will be seen that under the stipulation and agreed state of facts above set out that but a single question is presented for our determination, viz., whether a chattel mortgage executed to secure notes not maturing or due within two years from the date of the mortgage, is a valid mortgage under our statute, for the period of two years. Under the agreement here, five notes were secured by this mortgage, three of them having more than two years to run before maturity after the date of the notes and the mortgage. The two notes falling due within two years had been paid and the mortgage no longer secured them, and could have no vitality as to them after they were paid.

The controversy in this case arises under the fourth section of Chap. 95, on Mortgages, Starr & C. Ill. Statutes, which reads :

" Such mortgage, trust deed or other conveyance of personal property, acknowledged as provided in this act, shall be admitted to record by the recorder of the county in which the mortgagor shall reside at the time when the instrument is executed and recorded, or in case the mortgagor is not a resident of this State, then in the county where the property is situated and kept, and shall thereupon, if *bona fide*, be good and valid from the time it is filed for record until the maturity of the entire debt or obligation, provided such time shall not exceed two years."

We do not understand appellant to claim that this mortgage could protect the property or secure the debt as against creditors or purchasers, beyond the period of two years from its date, nor do we understand that any such effect could be given to it, without it being renewed as now provided by law under the act of 1887. We think a correct construction of the statute above quoted makes the limitation of two years apply to the mortgage lien and not to the debt secured by the mortgage. The subject of the entire section is the mortgage and not the debt, the thing the Legislature is providing for, and limiting the security of the mortgage.

It is clear, we think, that the Legislature intended to allow debtors to use their chattel property for security to any

creditor for a limited time only. This was for the purpose of enabling them to obtain credit, or to secure debts already incurred.

The policy of the law seems to be that debtors shall not be permitted to incumber their personal property for a greater length of time than two years, and if the debt secured shall not mature before that time then the security shall extend for the full period of two years. But it is contended that because of this limitation to the mortgage, that it amounts necessarily or by implication to a like limitation on the debt itself, and if the debt has more than two years to run, that it is therefore such a debt as is without the protection of the mortgage, and that such debt can not be secured by a chattel mortgage, even for a period of two years.

We do not think such a result follows our construction of the statute. We think it a matter of no importance how long the debt has to run before maturity, either in whole or in part, nor how large or small it may be. It may, notwithstanding, be secured for the full period of two years, and the property remain with the mortgagor for that time, provided it does not fall due before that time; but at the end of two years, if the debt is not due, or if due and the property not taken possession of by the mortgagee at the time it is due, then as to other creditors and purchasers the security of the mortgage closes, unless the same be renewed or extended as provided in Sec. 4, page 179, of the Act of 1887.

In the case of Cook v. Thayer, 11 Ill. 617, the Supreme Court construed the statute of 1845, containing provisions substantially like our present statute, so far as limiting the lien of chattel mortgages to two years is concerned. In that case the note had three years to run. The Supreme Court say: "The true meaning of the statute is that a mortgage on personal property duly acknowledged, if made in good faith, and to secure an honest debt, shall be good and valid against creditors and purchasers for the space of two years after the same is recorded, and not that a mortgage which has a longer period to run is without the protection of the statute altogether. It continues valid and operative for two

years, whether the debt which it is designed to secure then becomes due or not; at the end of two years it ceases to be valid as against creditors and purchasers, unless the possession of the property is transferred to the mortgagee.".

And it would seem from the language of the Supreme Court in Cook v. Thayer, *supra*, that when a mortgage secured a debt which did not mature in two years, that for the purpose of making the security available, the mortgagee might take possession of the property at the end of two years, although the debt is not in fact due; but whether that right here existed we do not decide, but, however that may be, it is clear that the mortgagor has a right to secure a debt not maturing in two years with a chattel mortgage for the full period of two years. We find none of the cases cited by appellee in any wise inconsistent with this view, nor inconsistent with the rule announced in Cook v. Thayer.

We think this case clearly controls the one at bar. While the phraseology of the two statutes is not exactly alike, still we think there is no substantial difference so far as they both relate to the two years' limit of the mortgage. We think, though, that the statute now in force made this mortgage a good and valid lien for the notes not then due, and which would not be due on their face within the two years from the date and recording of the mortgage.

We think much confusion and misapprehension of the law governing the case at bar and similar cases reported results from a failure to make a distinction between the debt to be secured and the mortgage given to secure it. The whole purview of the chattel mortgage statute relates to the mortgage itself, and not to the debt, except to require that the debt shall be a real and honest debt. We see no reason in this statute for concluding that the Legislature intended to make any distinction between large or small creditors, or between those whose debts would mature within or after the expiration of two years, or that it was the intention to allow debtors to secure only debts which should mature within two years, and deny them the right to secure other debts not maturing within that time, although the security could not extend to

Aultman & Co. v. Silvis.

the full time of the debt and must stop at the end of two years. The great purpose and aim of the statute was to confer power on debtors to use their personal property to secure their honest debts (no matter what kind or when due) for the limited space of two years. This was supposed to be a valuable privilege enforced on both debtor and creditor.

But for reasons of public policy and to prevent needy debtors and grasping creditors from incumbering perishable and short-lived property, and to prevent undue favors to particular creditors to the hindrance and damage of others, the Legislature deemed it wise to limit the lifetime of that kind of security under any single mortgage to two years, and to a less time than that if the debt matured sooner.

But there is another ground upon which the plaintiff's right to recover seems clear to us. It will be seen by the stipulations above set out that the mortgage provides that in case the property should be seized on *mesne* or final process during the life of the mortgage then the mortgagee might declare the whole debt due and immediately take the property.

This he did, and upon doing so his right to immediate possession of the property became absolute.

By the right to declare the whole debt due reserved in the mortgage upon the happening of the event named, and by exercising that right and so declaring the debt due, the mortgagee thereupon removed out of the case. The whole ground or pretended right of appellee to hold the property under his execution, became thereupon *ipso facto;* the whole debt became due within two years, and there could no longer be any question about the mortgage covering and protecting the property.

This right of a creditor and mortgagee to declare his whole debt due in advance of the time named in the note in case of seizure of the goods by another, or in case of danger of losing his security, and to thereupon take the goods under his mortgage, has been repeatedly held by the Supreme Court to be the law and the right of the mortgagee. Bailey v. Godfrey et al., 54 Ill. 507; Lewis v. D'Arcy, 71 Ill. 648; Roy v. Goings, 96 Ill. 361.

Under either view of the case we have discussed we think it clear that appellant was entitled to the possession of the goods described in the mortgage, and that the court erred in its finding and judgment to the contrary.

For that error judgment is reversed and remanded.

*Reversed and remanded.*

LACEY, J.   I regard the mortgage as valid under the statute.